**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 1-24-44150-nhl |
| 8501 Fort Hamilton Parkway Ltd., | |
| Debtor. | |

**OBJECTION OF FLAGSTAR BANK, N.A. TO DEBTOR'S MOTION TO MODIFY
AND VACATE CERTAIN ASPECTS OF THE STIPULATION AND ORDER
AUTHORIZING, *INTER ALIA*, THE SALE OF THE DEBTOR'S PROPERTY**

Flagstar Bank, N.A., successor by merger to New York Community Bank, ("**Lender**"), by and through its attorneys, McCarter & English, LLP, respectfully submits this Objection to the Motion of 8501 Fort Hamilton Parkway Ltd. ("**Debtor**") seeking to modify and vacate certain aspects of the Stipulation and Order authorizing, *inter alia*, the sale of the Debtor's property (the "**Motion**"). In support of the Objection, Lender respectfully states as follows:

**PRELIMINARY STATEMENT**

From February to April 2025, Lender and Debtor negotiated resolutions of multiple issues in this proceeding, including use of cash collateral, compensation to professionals, and a sale process. Those negotiated terms were incorporated into an integrated agreement under the Stipulation. Debtor now seeks to modify critical provisions of the Stipulation while leaving other provisions unchanged that are beneficial only to it. It argues that the health of the Debtor's principal, a robust auction process, and Lender's refusal to "recognize the true market value of the Property" are extraordinary circumstances under Federal Rule 60(b)(6) justifying (a) elimination of Lender's right to reject any bid, and (b) changes to the agreed upon compensation provisions of the Stipulation. The law does not support the relief requested.

In addition, Lender acknowledges the Court's concern that the High Bid appears to be a boon to Lender despite it being $2,000,000 less than its Claim. However, because of Debtor's failure to comply with the Stipulation and its post-petition payment obligations, including payment of real estate taxes, over $750,000 must be deducted from the High Bid before payment of proceeds to Lender. In addition, unless a plan is filed and confirmed (a process that was to be started by May 9), transfer and recording taxes of over $150,000 must also be deducted. The facially positive outcome of the auction is tarnished by the pre- and post-petition failures of Debtor. Lender's ability to evaluate the bids and decide whether to accept or reject based on the current circumstances over which it had no control, was a negotiated right, and a right provided under Section 363(f)(2) of the Bankruptcy Code. Similarly, Lender has no control over the collection rents, which is to be the sole source of payment of Debtor's counsel fees as negotiated under the Stipulation.  Thus, this term should also not be modified, and the Motion should be denied.

## PRE-PETITION BACKGROUND

1.      Lender filed a proof of claim on November 20, 2024 (the "**Claim**") in the amount of $6,425,967.42 relating to a commercial loan to Debtor (the "**Loan**"). [Claim 4-1] As detailed in the Claim, repayment of the Loan is secured by a mortgage on the Debtor's real property (the "the "**Mortgaged Property**"), an assignment of rents and leases, and a security interest in personal property of Debtor. All documents executed in connection with the Loan are hereinafter referred to collectively as the "**Loan Documents**".

2.      Debtor defaulted under the Loan Documents in at least August 2023, resulting in Lender's commencement of a foreclosure action in New York Supreme Court, County of Kings (the "**Foreclosure Action**") and the appointment of a receiver therein.

ME1\56981998.v1

3.      While a decision on Lender's summary judgment motion was pending, Debtor filed this proceeding on October 4, 2024 (the "**Petition Date**"), staying the Foreclosure Action.

## PROCEDURAL HISTORY

4.      Given the inaction of the Debtor during the first four months of the bankruptcy, the lack of information about the status of the Mortgaged Property and collection of rents, and the Lender's pending Foreclosure Action, on January 24, 2025, Lender filed a Motion for Relief from the Automatic Stay or in the alternative to Dismiss the proceeding (the "**Stay Relief Motion**").

5.      On January 28, 2025, the Court held a case management conference at which Debtor advised the Court that it intended to file a Motion to sell the Mortgaged Property.

6.      On February 7, 2025, Debtor filed motions to retain counsel and a broker and a motion for a Section 363 sale of the Mortgaged Property (the "**Sale Motion**"), to which Lender filed objections on February 24, 2025. Lender's objections to the Sale Motion focused on the lack of a specified sale process and benchmarks, and the need to preserve Lender's secured interests.

7.      For two months, Debtor and Lender negotiated to resolve the objections and establish terms for use of cash collateral.  They agreed to seek an adjournment of the hearings to allow those negotiations to continue.  Ultimately, a hearing was held on April 1, 2025 at which Debtor and Lender advised the Court that, subject to an approved stipulation, an agreement had been reached in concept as to the Sale Motion, compensation to professionals and the broker, and use of cash collateral.   Accordingly, the Court adjourned the Stay Relief Motion to May 20, 2025.

8.      On April 18, 2025, Debtor submitted a proposed Stipulation and Order (a) authorizing Debtor's use of rents, (b) authorizing the sale of the Mortgaged Property and providing for payment of counsel fees, and (c) establishing compensation for the broker. The Stipulation and

Order was entered by the Court on April 21, 2025 (the "**Stipulation**"), a copy of which is attached as <u>Exhibit A</u> for the Court's reference.

9.      The fully integrated Stipulation was a comprehensive agreement between the parties to create a mechanism for payment of counsel fees and broker commissions, and to established steps leading up to the auction designed to minimize third party liens to maximize net proceeds from a sale. Some of the negotiated provisions include the following:

      a.  Adequate protection payment of $13,270 beginning immediately and on the 15th day/month thereafter;

      b.  May 6, 2025 deadline for third parties to object to Lender's claim;

      c.  By May 9, 2025, Debtor shall do the following or Lender shall be granted stay relief:
            i.  Debtor must file RPIE[1]s for 2022-present
          ii.  Debtor must provide DHCR[2] history and information to Lender and any missing filings/reporting must be submitted
        iii.  Proposed Plan of Liquidation must be filed

      d.  July 15, 2025 – bids due

      e.  July 16, 2025 – auction

      f.  July 22, 2025 – sale confirmation hearing, or if no acceptable bid, Lender shall be granted stay relief.

Unfortunately, Debtor did not collect rents or diverted rents, did not make all required adequate protection payments, and did not meet any of the May 9, 2025 deadlines.

10.      On May 20, 2025, the Court held a Case Management Conference at which time Debtor reported on the sale process and Lender advised the Court that the Debtor had failed to

---

[1] Real Property Income and Expense reports required to be filed annually with the City of New York, Department of Finance for purposes of assessing income producing properties.  Fines and penalties are imposed for failure to comply. Local Law 52.

[2] Division of Housing and Community Renewal reports on rent regulated buildings must be filed annually with the City.

meet the May 9, 2025 deadlines above but agreed to carry the Stay Relief Motion to allow Debtor additional time to comply since the sale process was underway.

11.    The Court held another Case Management Conference on June 24, 2025 at which time the Debtor again reported on the sale process and the status of Debtor's principal, and Lender advised the Court that despite the Debtor's continued failure to meet the Stipulation deadlines and at least two months of missed adequate protection payments, Lender was willing to complete the sale process given that it had the right to reject unacceptable bids and proceed with the Foreclosure Action.

12.    On July 11, 2025, Debtor sought to adjourn the auction sale. On July 14, 2025, Lender objected to the adjournment request. On July 17, 2025, the auction proceeded at which the high bid was $4,200,000 (the "**High Bid**").  On July 22, 2025, Debtor and Lender appeared before the Court requesting a 30-day adjournment of the  scheduled hearing to either confirm the sale to the High Bid bidder or to grant Lender' Stay Relief Motion, and for a Case Management Conference. The Court adjourned the hearing to August 19, 2025.

13.    Lender continues to evaluate the High Bid and the expected deductions from proceeds.  Contrary to Debtor's suggestion that Lender is "frustrating the completion of the sale process," it has been working with and funding an expediter who is trying to address penalties and fines against the Mortgaged Property in excess of $380,000 to minimize those deductions, something Debtor was required to do under the Stipulation. Debtor has not cooperated in those efforts despite numerous requests for information that would assist the expediter. In addition, Debtor has the ability to file a Motion to reduce the City's claims[3] but to date has not done so.

---

[3] Filed claims include (a) Claim 2-1 filed by New York City in the amount of $231,075.95, plus 18% interest, for RPIE violations, penalties and fees categorized as secured; (b) Claim 3-1 filed by the City for ECB violations in the amount of $17,881.14, $3,131.14 categorized as secure; and (c) Claim 5-1 filed by New York Water Board in the

Regardless, Lender will make a decision as to whether it will accept or reject the High Bid at or prior to the August 19, 2025 hearing.

**Debtor Does Not Satisfy the Standard for Relief from an Order Under Federal Rule 60(b)(6)**

14.     No legal or factual basis exists to alter selected terms of the Stipulation. Relief from an order or judgment under Federal Rul 60(b)(6) "requires extraordinary circumstances … The text and structure of Rule 60 make clear that relief under Rule 60(b)(6) is available only in narrow circumstances." *BLOM Bank SAL v. Honickman*, 605 U.S. __, 145 S. Ct. 1612, 1619 (2025). Relief under Rule 60(b) is "only warranted if the defendant presents highly convincing evidence that demonstrates extraordinary circumstances justifying relief." *Hoffenberg v. U.S.*, 2010 WL 1685558, at *4 (S.D.N.Y. Apr. 26, 2010)[4], citing *James v. U.S.*, 603 F.Supp.2d 472, 478 (E.D.N.Y. 2009); *U.S. v. International Broth. Of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) ("[a] motion for relief from judgment is generally not favored and is properly granted only upon a showing of exceptional circumstances."); *see also In re Koper*, 552 B.R. 208, 221 (E.D.N.Y. Bankr. 2016) (noting that Rule 60(b)(6) "confers no standardless residual discretionary power to set aside judgments on mere second thought").

15.     In determining whether a movant has met its burden under Rule 60(b)(6), "relevant considerations include: (1) the desire to resolve disputes on their merits; (2) the existence of a meritorious claim or defense; and (3) the absence of unfair prejudice to the opposing party if the requested relief is granted." *In re Richardson Foods, Inc.*, 667 B.R. 500, 524 (S.D.N.Y. Bankr. 2025).

---

amount of $180,905 claimed as secured. Other City claims are accruing and once on the tax rolls become liens on the Mortgaged Property.

[4] Copies of unpublished opinions are attached hereto as Exhibit B.

16.     Here, Debtor seeks relief from the Stipulation which it negotiated and agreed to. This is not the case where a Court order was entered over an objection of a party who is now seeking relief based on extraordinary circumstances. As discussed below, the Stipulation is a binding agreement by Debtor.  Thus, the first two *Richardson Foods* factors are inapplicable here. As to the third factor of unfair prejudice to the opposing party, Lender will be stripped of its contractual and legal rights negotiated under the Stipulation to its economic detriment. Lender was at the summary judgment phase of the Foreclosure Action with a receiver in place when this proceeding was filed. Over ten months have passed in this single asset case and rather than resuscitating the Debtor, Debtor has allowed the Mortgaged Property to deteriorate, rents are not being collected or are being diverted, and post-petition obligations are not being met. Debtor has not filed a Plan or made more than two payments to Lender. Debtor has not filed its RPIE and DHCR reports, nor has it cooperated with expediter retained to address these delinquencies, resulting in existing penalty liens of over $380,000. "In a vast majority of the cases finding that extraordinary circumstances do exist . . . , the movant is completely without fault for his or her predicament." *BLOM Bank,* at 1620. That is simply not the case here.

17.     Debtor argues that the health issues of its sole member and principal constitute extraordinary circumstances justifying relief from selective provisions of the Stipulation.  Courts within the Second Circuit, however, generally reject a party's illness as an extraordinary circumstance warranting relief under Rule 60(b)(6). *See, e.g.*, *Spinelli v. Secretary of Dept. of Interior*, 2006 WL 2990482, at *4 (E.D.N.Y. Oct. 19, 2006) (holding that attorney's two-year cancer diagnosis, and its effect on her ability to handle her caseload, leading to a delay in filing a motion for reconsideration was insufficient to qualify as an "extraordinary circumstance" under Rule 60(b)(6)); *Abad v. United States*, 2018 WL 2021698, at *2 (S.D.N.Y. Apr. 12, 2018) (holding

that petitioner's mental disability was insufficient to constitute an "extraordinary circumstance" warranting relief under Rule 60(b)(6) where petitioner was nonetheless able to file multiple documents with the court); *Kantor v. Air Atlantic Medical, P.C.*, 2023 WL 2329800, at *8 (E.D.N.Y. March 2, 2023) (holding that defense counsel's illness did not justify defendants' multi-year failure to defend the subject lawsuit to warrant vacatur of a default judgment under Rule 60(b)(6)); *Long v. Carberry*, 151 F.R.D. 240, 244-45 (S.D.N.Y. 1993) (holding that plaintiff's illness and his attorney's illness and financial hardship did "not rise to the level of extraordinary circumstances contemplated by Rule 60(b)(6)" to vacate default judgments filed against him); *see also In re Turner & Cook, Inc.*, 2014 WL 1922873, at *6 (Bankr. D. Vt. May 14, 2014) (holding that transfer of disabled debtor's vehicles and equipment did not constitute a hardship "undue and extreme, or that these circumstances are so extraordinary so as to fall under the *extremely meager* scope of Rule 60(b)(6)" for reconsideration of decision on motion for summary judgment) (emphasis added).

18.    Although there is sympathy for the principal's condition, there is no connection to how his medical issues warrant elimination of the Lender's right under the Stipulation to accept or reject a bid. Indeed, this provision is a memorialization of its statutory right under Section 363(f)(2) of the Bankruptcy Code.[5] Debtor asserts that the health issue impeded collection of rents and therefore the source of payment of counsel fees should not be limited to the rents. According to the rent roll produced by Debtor, the Mortgaged Property should generate about $70,000 per month in rents.  The building is almost 100% occupied.  If no one is collecting the rents or if rents are

---

[5] Section 363(f)(2) provides that a debtor may sell property free and clear of liens of a third party who is not being paid in full from the sale, only if "such entity consents." Here, the High Bid is over $2,000,000 less than the amount due to Lender. Lender has the right to reject the High Bid regardless of the Stipulation provisions.

being diverted, that is the fault of the Debtor and it cannot be a reason to grant relief to the detriment of Lender. *See BLOM Bank*, 145 S. Ct. at 1620.

19.    Debtor, without further explanation, also argues at page 4 of the Motion that the active auction process resulting in the High Bid and Lender's perceived failure to recognize the "true market value" of the Mortgaged Property also constitute extraordinary circumstances justifying relief from certain provisions of the Stipulation. Neither the perceived success of the auction nor the perceived value of the Mortgaged Property are extraordinary circumstances justifying the requested relief. In reality, Debtor is seeking to compel Lender to accept the High Bid regardless of Lender's bargained for right to reject, Section 363(f)(2), Lender's business judgment and the insufficient net recovery that has been significantly reduced due to the failure of Debtor to meet its obligations as an owner of real property in New York City and its post-petition obligations under the Bankruptcy Code.

20.    Accordingly, Debtor has failed to meet the standard for granting relief from an order or judgment under Federal Rule 60(b)(6) and the Motion should be denied.

## **The Stipulation is a Contract that Should Not Be Unilaterally Modified**

21.    "It is well settled that stipulations between parties or their attorneys, reduced to a writing or to an order which has been entered becomes a binding agreement; and that the authority of the court to relieve a party from the scope of a court-approved stipulation is an exercise of discretion which cannot be involved without a showing of good cause therefor, such as fraud, collusion, mistake, accident, or some other ground of the same nature." *In re Napolitano*, No. 07-73361-478, 2008 WL 5401541, at *3 (E.D.N.Y. Bankr. Dec. 23, 2008); *see also In re Ladder 3 Corp.*, 571 B.R. 525, 533 (E.D.N.Y. Bankr. 2017) ("[a] stipulation is a contract, to be enforced under principles of contract law … Where the intention of the parties is clearly and

unambiguously set forth, effect must be given to the intent as stated by the language used"); *In re Royster Co.*, 132 B.R. 684, 688 (S.D.N.Y. Bankr. 1991) ("any modification of [a stipulation] is subject to the general principles governing the construction, interpretation and law of contracts").

22.     "A contract should be enforced according to its terms or not at all. This Court has no authority to compel a party to do something different from what he has agreed to do in his contract." *In re North Broadway Funding Corp.*, 6 B.R. 133, 136 (E.D.N.Y. Bankr. 1980).

23.     "The stipulation constitutes a contract between the parties and cannot be modified by the courts absent a clear expression of intent that its provisions may be modified by judicial proceedings under stated conditions." *Standley v. Standley*, 83 A.D.2d 863, 864 (2d Dep't 1981); *see also Cappello v. Cappello*, 286 A.D.2d 360, 361 (2d Dep't 2001) ("[a] stipulation entered into in open court, with the parties and counsel present, is a binding contract … [a] court cannot rewrite the agreement if the parties have not assented to such a reformation").

24.     Here, the Stipulation was negotiated and agreed to by Debtor and Lender. The Stipulation once entered by the Court became a binding contract. It is an integrated agreement under which one provision is dependent upon and affects another. Isolated provisions of the Stipulation cannot be severed or modified unilaterally simply because they no longer benefit Debtor. *See*, *Koper*, 552 B.R. at 216 (a party may not be relieved of an agreement merely because the party was incorrect in its assessment of certain consequences). The Lender's ability to accept or reject a bid that does not pay the Lender in full was not only a critical provision of the Stipulation, but also a confirmation of Lender's rights under Section 363(f)(2).  Payment of attorney's fees from Lender's rents was also a negotiated provision. It was expected that bids would come in significantly lower than the debt but there was an available source for payment from the rental income under a $70,000/month rent roll.

25.     Accordingly, the Stipulation is a binding contract that should not be altered and the Motion should be denied.

**<u>NOTICE</u>**

26.     Lender is providing notice of this objection to: (a) the U.S. Trustee; (b) Debtor's counsel; (c) all scheduled and filed creditors; and (d) all other parties having requested notices in this bankruptcy action.

**WHEREFORE**, for the foregoing reasons, Lender respectfully requests this Court to deny the Motion.

Date: August 15, 2025                              **McCARTER & ENGLISH, LLP**


By: _s/ Joseph Lubertazzi, Jr._
        Joseph Lubertazzi, Jr.
        A Member of the Firm

        Four Gateway Center
        100 Mulberry Street
        Newark, NJ 07102
        Tel.:  (973) 622-4444

                -and-

        250 W. 55th Street, 13th Floor
        New York, NY 10019
        Tel.:  (212) 609-6800
        jlubertazzi@mccarter.com
        *Attorneys for Flagstar Bank, N.A.*